UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

IVAN VELIUS,                        :      HONORABLE JOSEPH E. IRENAS
                                    :
            Plaintiff,              :
                                    :  Civil Action No. 09-53 (JEI/JS)
      v.                            :
                                    :      **OPINION**
                                    :
TOWNSHIP OF HAMILTON, ET AL., :
                                    :
            Defendants.             :
_____ :


ABRAMSON & DENENBERG, P.C.
By:  Thomas Bruno, II, Esq.
1315 Walnut Street, 12th Floor
Philadelphia, Pennsylvania 19107
            Counsel for Plaintiff

BARKER, SCOTT & GELFAND, P.C.
By:  A. Michael Barker, Esq.
Linwood Green– Suite 12
210 New Road
Linwood, New Jersey 08221
            Counsel for Defendants


**IRENAS**, Senior District Judge:

     At the trial of this § 1983 excessive force case, the jury

found that two of the three Defendants, police officer Francis

Smyth, and police officer Kevin Zippilli, violated Plaintiff Ivan

Velius's Fourth Amendment right not to be subjected to excessive

force, and failed to intervene to stop the use of excessive

force.  The jury found no liability as to Defendant police

officer James Jacobi.  The jury also found that the use of

excessive force and the failure to intervene did not cause injury

to Velius and awarded him one dollar in nominal damages.
Plaintiff presently moves for an award of $82,360.00 in
attorney's fees[1] and $2,865.33 in costs pursuant to 42 U.S.C.
§ 1988.  For the reasons stated herein, the Court will award
Plaintiff minimal attorney's fees.[2]

## I.

At trial Plaintiff asserted that during his admittedly legal
arrest, Defendants Smyth and Zippilli used excessive force in
violation of the Fourth Amendment when they placed handcuffs too
tightly around his wrist / forearm area.[3]  Plaintiff also
asserted that Defendants Smyth, Zippilli, and Jacobi failed to
stop the use of excessive force by failing to loosen the
handcuffs in response to Plaintiff's repeated complaints.[4]

----

[1]  Plaintiff originally sought $82,600.00 in attorney's fees
but in response to specific objections by Defendants, Plaintiff
has agreed to slightly reduce the amount sought.  (See Pl's Reply
Brief, p. 10)

[2]  The Court makes no ruling on costs at this time.  Local
Civil Rule 54.1 requires that an application for costs be first
filed with the Clerk of Court, whose decision may be subsequently
appealed to the undersigned.  *Cf. McKenna v. City of
Philadelphia*, 582 F.3d 447, 453-54 (3d Cir. 2009) (discussing the
Eastern District of Pennsylvania's analogous local rule regarding
costs in a case seeking review of a fee award pursuant to
§ 1988).

[3]  Neither Plaintiff, nor the two Defendants, could recall
which officer actually placed the handcuffs on Plaintiff.

[4]  Plaintiff had asserted a municipal liability claim
against Hamilton Township but voluntarily dismissed that claim on

Plaintiff sought compensatory damages for pain and suffering but not for any pecuniary loss resulting from his asserted injuries.  He also sought punitive damages.

Plaintiff's success was limited.  Using a special verdict form, the jury found no liability as to Defendant Jacobi.  The jury did find that Defendants Smyth and Zippilli used excessive force and failed to intervene to stop the use of force, but also found that their actions did not cause injury to Plaintiff.[5]  Accordingly, Plaintiff was awarded one dollar in nominal damages.  The jury awarded no punitive damages.

## II.

"In any action . . . to enforce a provision of section[]. . . . 1983 . . . of [Title 42]. . . the court in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs."  42 U.S.C. § 1988.

## III.

### A.

The Supreme Court held in *Farrar v. Hobby*, "[w]hen a

the eve of trial.

[5]  Plaintiff had presented testimony at trial that the excessively tight handcuffs caused nerve damage in his hands. The jury apparently either found that Plaintiff suffered no injury, or found that his injury was not caused by Defendants' conduct.

plaintiff recovers only nominal damages because of his failure to prove an essential element of his claim for monetary relief" "the court may lawfully award low fees or no fees," depending on the circumstances of the case.  506 U.S. 103, 115 (1992).[6] Unfortunately, *Farrar*'s majority opinion provides very little practical guidance on how to discern between cases where "low" fees are appropriate and cases where "no" fees are appropriate.

This Court must determine Plaintiff's overall degree of success by "giv[ing] primary consideration to the amount of damages awarded as compared to the amount sought."  *Id.* at 114 (internal citation and quotation omitted).  But within the realm of nominal damages cases, this factor does little to help separate the "low fee" cases from the "no fee" cases.  One of the two variables-- the amount of damages awarded-- will often be the same (i.e., nominal damages), but not always.[7]  The other variable-- the amount sought-- is often not specifically known[8]

---

[6]  *Farrar* also held that a plaintiff who wins a nominal damages judgment is a "prevailing party" under § 1988.  The parties do not dispute that Plaintiff is a prevailing party who is eligible for fees pursuant to § 1988.

[7]  The Third Circuit held in *Jama v. Esmor Correctional Services, Inc.*, that if a plaintiff's successful pendent state law claims are related to the claim for which nominal damages were awarded, they may "inform the degree of [plaintiff's] overall success for the purposes of § 1988." 577 F.3d 169, 180 (3d Cir. 2009).  In this case, there were no pendent state law claims.

[8]  Both state courts and federal district courts in New Jersey prohibit pleading a specific monetary damage amount.  *See*

or is likely to change over the course of the litigation.[9]  Thus, comparing these two numbers from case to case, or even within a case, provides little meaningful insight into "the degree of success obtained" by any given plaintiff.  *Farrar*, 506 U.S. at 114.

Nor do the facts of *Farrar* help to illustrate when no fees, as opposed to low fees, are appropriate.  *Farrar* states that "[w]hen a plaintiff recovers only nominal damages . . . the only reasonable fee is *usually* no fee at all," 506 U.S. at 115[10], but the opinion provides very little context for this statement because, as Justice O'Connor's concurrence makes clear, there was nothing usual about Farrar's case.  *See Farrar,* 506 U.S. at 116, 121 ("If ever there was a plaintiff who deserved no attorney's fees at all, that plaintiff is Joseph Farrar. . . . [He] asked for 17 million dollars; he got one.  It is hard to envision a more dramatic difference.") (O'Connor, J., concurring).  Because

---

N.J. Ct. R. 4:5-2; L.Civ.R. 8.1.

[9]  Neither the majority opinion, nor Justice O'Connor's concurrence, indicate which stage of the litigation the Court should consider when identifying the amount sought (possibilities include when the complaint is filed, after the close of discovery, or at some time during trial).  Nor do they indicate whether or how settlement offers should be considered.

[10]  On the very same page, the majority states that, "*[i]n some circumstances*, even a plaintiff who formally 'prevails' under § 1988 should receive no attorney's fees at all.  A plaintiff who seeks compensatory damages but receives no more than nominal damages is *often* such a prevailing party." *Farrar*, 506 U.S. at 115 (emphasis added).

*Farrar* is such an extreme case, it does not readily analogize to any other case, even though the ultimate result-- no fees-- should "usually," or "often," be the result.

In implicit recognition of the ambiguity left by the majority opinion, Justice O'Connor, and subsequently the Third Circuit, have emphasized that in determining a plaintiff's degree of success (and therefore the appropriate fees pursuant to § 1988), "'courts must also look to . . . the significance of the legal issue' decided, and whether the decision 'accomplished some public goal.'" *Jama v. Esmor Correctional Services, Inc.*, 577 F.3d 169, 175 (3d Cir. 2009) (quoting Justice O'Connor's concurrence in *Farrar*).

In *Jama*, the Third Circuit discussed two examples of nominal damages cases involving significant legal issues, the decision on which served a public purpose. *Mercer v. Duke University* was a Title IX suit by a female college football player who was cut from Duke's Division I-A men's football team. 401 F.3d 199 (4th Cir. 2005). The Fourth Circuit explained that "the facts as found by the jury gave rise to a first-of-its-kind liability determination," "and it will serve as guidance for other schools facing the issue." *Id.* at 207, 206; *see also id.* at 208 ("Mercer's case was important in that it marked a milestone in the development of the law under Title IX."); *cf.* *Farrar*, 506 U.S. at 122 ("[the judgment in Farrar's favor]

6

teaches no valuable lesson because it carries no discernable meaning.").

In *Diaz-Rivera v. Rivera-Rodriguez*, a large group of municipal employees prevailed on their due process claim that municipal decisionmakers discriminated against them on the basis of their political party affiliation following a change in administration where a new political party came into power. 377 F.3d 119 (1st Cir. 2004). In that case, the First Circuit explained, "the determination that the municipality violated plaintiffs' constitutional rights represented a significant legal conclusion serving an important public purpose." *Id.* at 125.

In considering Plaintiff's overall degree of success immediately below, the Court considers all three of the above-discussed "indicia of success": the difference between the damages sought and awarded, as well as the significance of the legal issue and whether this suit accomplished some public goal. *Jama*, 577 F.3d at 175 (quoting *Farrar*, 506 U.S. at 122 (O'Connor, J., concurring)).

*Damages sought vs. damages awarded*

This case is not as extreme as *Farrar* for several reasons. First, Plaintiff sought compensatory damages "not in excess of One Hundred Fifty Thousand Dollars ($150,000)" (Compl. ¶ 29)--

vastly less than $17 million.[11]  Second, this case was not litigated for ten years; trial was completed less than two years after the complaint was filed.  Lastly, Plaintiff had at least a little greater measure of success than the plaintiff in *Farrar*-- he won a nominal judgment against two out of three defendants, instead of one out of six.[12]

*Significance of the legal issue decided and public purpose*

Justice O'Connor's concurrence states that a nominal damages award may not indicate a *de minimis* victory when the judgment has a "discernable meaning" which "teaches a valuable lesson."  *Farrar*, 506 U.S. at 121-22 (O'Connor, J., concurring). In such a case, the judgment represents a meaningful result because it provides guidance to courts, and state actors, as to whether particular conduct is permissible.  *Cf. id.* at 122 (explaining that *Farrar's* 'regrettably obtuse' verdict cannot "deter misconduct" because the "conduct to be deterred [is not] apparent from the verdict.") (internal citation omitted).

The Court concludes that the judgment in this case does

---

[11]  Plaintiff did not seek to recover pecuniary losses, he only sought compensation for physical, mental, and emotional harm.

[12]  Neither *Farrar* nor *Jama* clarify whether the extent of success is measured by the original complaint or, rather, by the claims that were actually submitted to the jury.  If it is the former, Plaintiff's success was more limited-- he voluntarily dismissed Defendant Hamilton Township on the eve of trial.

teach a valuable lesson involving a significant legal issue, which serves a public purpose.  This case involved handcuffing of an arrestee-- an action law enforcement officers repeat on daily basis throughout the country.  When the jury found that Defendants Zippilli and Smyth used excessive force in handcuffing Plaintiff, it provided a concrete and specific example of a significant legal principle: "officers may violate a person's Fourth Amendment right to be free from excessive force even in the absence of physical injury."  *Velius v. Twp. of Hamilton*, No. 09-53, 2010 U.S. Dist. LEXIS 128851 at *14 (D.N.J. Dec. 7, 2010) (denying Defendants' Rule 59 Motion to Alter the Judgment).  For this reason, the judgment has exemplary value which may guide other officers' conduct in the future, thereby serving an important public purpose.[13]

In weighing all three factors together, the Court concludes that Plaintiff's victory was not merely *de minimis* and therefore an award of low fees, as opposed to no fees, is reasonable.

---

[13]   Plaintiff asserts that a legal issue is significant when it involves a Fourth Amendment violation.  The Court's holding is not so broad.  The judgment in this case is significant because the *type* of Fourth Amendment violation at issue-- excessively tight handcuffs-- is a violation that may be reasonably anticipated to reoccur with frequency.  It is the nature of the particular constitutional violation found by the jury that renders the judgment more than *de minimis*, not merely the superficial distinction that this case involved a Fourth Amendment violation whereas *Farrar*, for example, involved a Due Process violation.

**B.**

Having decided that a low fee is reasonable under the circumstances of this case, the Court must now award a particular monetary amount. *Farrar* makes clear that the Court "may lawfully award low fees . . . without reciting the 12 factors bearing on reasonableness or multiplying the number of hours reasonably expended by a reasonable hourly rate." 506 U.S. at 115 (internal citation and quotation omitted); *see also Farrar*, 506 U.S. at 117 ("when a plaintiff's victory is purely technical or *de minimis*, a district court need not go through the usual complexities involved in calculating attorney's fees.")(O'Connor, J., concurring).

Thus the Court is left with the general approach articulated in *Hensley v. Eckerhart*,

> [w]e hold that the extent of a plaintiff's success is a crucial factor in determining the proper amount of an award of attorney's fees under 42 U. S. C. § 1988. Where the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee. Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised.  But where the plaintiff achieved only limited success, the district court should award only that amount of fees that is reasonable in relation to the results obtained.

461 U.S. 424, 440 (1983).

In this case, Plaintiff's completely unsuccessful bystander liability claim against Defendant Jacobi is not "distinct in all respects" from his "successful" claims against Defendants Smyth and Zippilli.  *Id.* at 440.  Indeed, the claims were closely intertwined, insofar as the claim against Defendant Jacobi was dependent upon findings of liability against Defendants Smyth and Zippilli.  The Court cannot specifically parse the hours spent on the claims against Smyth and Zippilli as distinct from the claim against Jacobi.[14]  However, the fact that Plaintiff did not prevail on his claim against Jacobi factors into the Court's decision as to the reasonable fee for this case.

Moreover, consistent with *Hensley*'s distinction between successful and unsuccessful *claims*, the Court believes it appropriate to also consider tasks performed as to different *components* of claims, namely liability and damages.  In this case, it is possible to parse some of the attorney's work as related solely, or almost solely, to damages, whereas other tasks may be considered as relating primarily to liability.  Because the jury found no injury, and therefore no compensable damages, it is reasonable to deduct time devoted solely (or almost solely) to damages ("damages work") from the base number of hours to be

---

[14]  Plaintiff's attorney did not even separately bill time for each defendant's deposition.  His time records contain one time entry for all three depositions: "10-28-09; Defendant Officers [sic] Depositions (including travel time); 7.9 [hours]."

compensated.  Similarly, it is also reasonable to weigh more
heavily time devoted primarily to liability issues ("liability
work"), whereas time spent on tasks that may reasonably be
considered as encompassing both liability and damages (such as
conducting the initial client interview and drafting the
complaint) ("hybrid work") will be treated neutrally.  Thus, the
Court finds it reasonable in this case to assign 0% weight to
damages work; 75% weight to liability work; and 50% weight to
hybrid work.[15]

Three simple examples will suffice.  Plaintiff's attorney
spent 3.3 hours drafting, editing, and filing the complaint
(i.e., hybrid work).  Thus, of those 3.3 hours, Plaintiff's
counsel will be "credited" with 1.65 hours reasonably spent (50%
of 3.3).  Likewise, Plaintiff's counsel's 2.2 hours of "research"
on "handcuffs and handcuffing technique" (Pl's Ex. D) (i.e.,
liability work) will be credited 75% toward the hours reasonably
spent (75% of 2.2 = 1.65).  Lastly, Plaintiff's counsel's time
spent "review[ing] and edit[ing] [of Plaintiff's] medical
memorandum for trial" (i.e., damages work) will not be credited

---

[15]  Defendants challenged only a few tasks as being
completely unnecessary.  In response to Defendants' objections in
that regard, Plaintiff's attorney has agreed not to seek
compensation for those tasks.  *See supra* n.1.  Thus, the parties
do not dispute the total hours worked.

at all (0% of 1.3 hours = 0).[16]

After determining the reasonable number of hours spent using the above-described method[17], the Court must now assign a dollar value to that time.  The parties dispute whether Plaintiff's attorney's hourly rate of $400 is reasonable.  However, *Farrar* is clear that the Court need not engage in the lengthy analysis of determining a reasonable hourly rate.  Instead, in considering the three factors discussed in Section III. A. above, the Court exercises its discretion to conclude that $25 per hour is reasonable compensation for time reasonably spent on this case.

Accordingly, the Court multiplies the time reasonably spent on this case, 90.36 hours, by 25, to arrive at a reasonable compensation figure of $2259.00.

## IV.

For the above-stated reasons, Plaintiff's Motion for

---

[16]  Two specific time entries require additional explanation. First, the time Plaintiff's counsel spent at Defendants' medical expert witness' *de bene esse* deposition is credited as hybrid work, rather than damages work, on the theory that if the medical expert had testified in-person at trial, Plaintiff's attorney would be entitled to hybrid credit (50% weight) for that work.
Second, the Court considers the time Plaintiff's counsel spent on the instant fee petition to be most akin to damages work.  Therefore, that time will be given 0% weight.

[17]  The undisputed gross number of hours Plaintiff's counsel spent on this case was 205.9 hours.  Of that total number, 156.05 hours is classified as hybrid work; 33.4 hours is classified as damages work; and 16.45 hours is classified as liability work. (156.05 x .5) + (33.4 x 0) + (16.45 x .75) = 90.36 hours.

Attorney's Fees will be granted.  An appropriate Order and
Amended Judgment awarding Plaintiff $2259.00 in fees accompanies
this Opinion.


January 10, 2011                    ___s/ Joseph E. Irenas___
                                    **JOSEPH E. IRENAS, S.U.S.D.J.**